```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

MARY BETH O'CONNOR,

                       Plaintiff,        07-CV-141

                                       **DECISION**
               v.                         **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                       Defendant.

## **INTRODUCTION**

Plaintiff Mary Beth O'Connor ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("The Act") claiming that the Commissioner of Social Security ("Commissioner") improperly terminated her Supplemental Security Income benefits ("SSI").[1] Specifically, the Plaintiff alleges that the decision of the Social Security Appeals Counsel, upholding the decision of the Administrative Law Judge ("ALJ") that the Commissioner correctly terminated her benefits, was not supported by substantial evidence in the record and was contrary to applicable legal standards.

The Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, remand to the Commissioner for reconsideration of the evidence. The Commissioner cross-moves for judgment on the pleadings pursuant to 42 U.S.C.

---

[1] This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated September 28, 2009.

405(g) on the grounds that the findings of fact of the Commissioner are supported by substantial evidence. For the reasons discussed below, I hereby deny the Commissioner's cross-motion for judgment on the pleadings, grant plaintiff's motion for judgment on the pleadings, and remand this claim to the Commissioner for further proceedings consistent with this decision.

**BACKGROUND**

On July 13, 1999 the Plaintiff protectively filed an application for SSI, alleging disability due to affective disorder and back disorder, with an onset date of "1991." The Plaintiff's application was denied at the initial and reconsideration disability determination levels. After requesting a hearing before an ALJ, on May 17, 2001, Judge McNeil granted the Plaintiff's application for SSI on the grounds that she met the requirements of listing section 5.05 of Appendix 1, chronic liver disease.[2]

Following a Continuing Disability Review ("CDR") on April 15, 2004, the Social Security Administration ("SSA") notified the Plaintiff it determined her disability had ceased, and that payment of benefits would terminate on June 1, 2004. In making this determination, the reviewing physician noted that the Plaintiff's case "cannot be reviewed using the 'MI' medical improvement

---

[2] According to the decision rendered by ALJ Straub, the Plaintiff also filed another application for SSI benefits on June 14, 2001, alleging disability onset of December 31, 1991. ALJ Straub noted that, for purposes of his decision, the June 14, 2001 application was consolidated with the earlier July 13, 1999 application. This application was not found in the administrative record.

-2-

standard since the initial decision was incorrect." (Tr. at 210). Specifically, the physician stated that since the decision "was 'error on the face,' current CDR cannot be evaluated using 'MI' standard, and is therefore only evaluated currently." (Tr. at 210).

The Plaintiff then requested reconsideration of the cessation decision. In a determination dated November 4, 2004, disability hearing officer Salvatore Agro noted that "adjudication of CDR was conducted by the state agency and resulted in a reversal of the original favorable determination for 'error on the face.'" Mr. Agro concurred, noting "[t]he determination in question is therefore vacated" and the Plaintiff "is not entitled to adjudication of appeal under the medical improvement review standard ... comparison point (CPD) is not a relevant consideration at appeal." (Tr. at 234).[3] The Plaintiff then requested a hearing before an ALJ.

The Plaintiff appeared before ALJ Straub, accompanied by a paralegal, and testified at the hearing. In a decision dated December 29, 2005, ALJ Straub affirmed the determination that the Plaintiff was no longer disabled as defined in the Social Security Act. Plaintiff timely filed a request for review of ALJ Straub's decision by the Social Security Administration Appeals Council which was denied in a letter dated February 21, 2007. Plaintiff subsequently filed this action on March 2, 2007.

---

[3] However, an undated and unsigned document, Form SSA-5002 (8-81), presumably from the Social Security Administration, notes that "[a]n exception to the Medical Improvement Review Standard does not apply in this case" and that "[t]he determination must be made using the Medical Improvement Review Standards." (Tr. at 348).

**Discussion**

I.  Jurisdiction and Scope of Review

Title 42, section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976). This section has been made applicable to SSI cases by 42 U.S.C. section 1383(c)(3). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this Court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990)(holding that review

of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Plaintiff and the Commissioner both move for judgment on the pleadings pursuant to 42 U.S.C. 405(g)[4] and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of social Security, with or without remanding the cause fora rehearing." 42 U.S.C. §405(g)(2009). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

II. Standard for Termination of Disability Benefits

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[4] As provided in Title XVI (Supplemental Security Income), codified at 42 U.S.C. 1383(c)(3).

-5-

to last for a continuous period of not less than 12 months..." 42 U.S.C. §423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance); 42 U.S.C. §1382c(a)(3)(A)(concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§423(d)(2)(A) and 1382c(a)(3)(b).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. 404.1572(a); 20 C.F.R. 416.972(a). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform a five-step sequential evaluation. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). However, when, as in the instant case, the

Commissioner has determined that a claimant is disabled, evaluation of whether the claimant continues to be disabled requires the ALJ to follow a different, seven-step evaluation process. See 20 C.F.R. 416.994(b)(5)(i)-(vii). In determining whether or not a claimant remains disabled, the Commissioner must consider:

(1) whether or not the claimant has an impairment or combination of impairments which meet or equal the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Social Security Regulations (if so, disability will be found to continue);

(2) if the claimant does not have such an impairment, has there been medical improvement[5] in the claimant's condition (if there has been medical improvement, the review proceeds to step 3; if there is no decrease in medical severity, there is no medical improvement, and the review proceeds to step 4);

(3) if the claimant's medical improvement is related to his or her ability to do work, i.e. whether or not there has been an increase in the residual functional capacity ("RFC") based on the impairment(s) that was present at

---

[5] The term "Medical Improvement" is defined under 20 C.F.R. 416.994(b)(1)(i) as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity *must be based on changes (improvement) in the symptoms, signs and/or laboratory findings* associated with your impairment(s)." (Emphasis added).

the time of the most recent favorable medical determination (if medical improvement is not related to ability to work, the review proceeds to step 4; if medical improvement is related to ability to work, the review proceeds to step 5);

(4) if the claimant was determined to have no medical improvement or if any medical improvement was determined to be unrelated to ability to work, do any of the specified exceptions apply (if none apply, disability will be found to continue; if an exception from the first group of exceptions[6] applies, the review proceeds to step 5; if an exception from the second group of exceptions[7] applies, disability will be found to have ended);

(5) whether or not the claimant's current impairments, either individually or in combination, are severe (if the RFC assessment in step 3 showed significant limitation in the claimant's ability to do basic work activities, the

---

[6] 20 C.F.R. 416.994(b)(3)(i)-(iv). Claimant has been the beneficiary of advances in medical or vocational therapy technology; claimant has undergone vocational therapy; based on new/improved evaluative or diagnostic techniques, the impairment is not as disabling as initially considered; prior disability decision was in error (this exception will not apply unless conditions for reopening a case under §§ 416.1488 - 89 are met (may reopen within 12 months of initial determination for any reason, or two years for good cause).

[7] 20 C.F.R. 416.994(b)(4)(i)-(iv). These exceptions apply without considering medical improvement or ability to work; prior determination was obtained by fraud; claimant does not cooperate, cannot be found, or fails to follow prescribed treatment.

review proceeds to step 6; if not, the claimant will be found no longer disabled);

(6) can the claimant still do work that he or she has performed in the past (if so, disability will be found to have ended);

(7) can the claimant do other work (if so, disability will be found to have ended; if not, disability continues).

See Lewis v. Barnhart, 201 F.Supp.2d 918 (N.D.Ind. 2002); see also Fleming v. Sullivan, 806 F.Supp. 13 (E.D.N.Y. 1992); see also Batista v. Barnhart, 326 F.Supp.2d 345 (E.D.N.Y. 2004).

III. The ALJ's decision to terminate plaintiff's benefits is not supported by the substantial evidence contained in the record, and contains errors of law.

A. The ALJ failed to make adequate findings in support of his conclusion that the plaintiff was no longer disabled as a result of her liver condition.

As noted above, the regulations applicable to a continuing disability review require the ALJ to analyze a claimant's claim using a seven-step process. In this case, however, while the ALJ began his decision by articulating the seven-step "medical improvement" review standard, his decision ultimately relied upon a different analytic strategy. Nonetheless, this Court will consider the ALJ's decision in its entirety to determine whether he made the requisite findings. See Lewis v. Barnhart, 201 F.Supp.2d at 932 (the decision of an ALJ will not necessarily be disturbed where he erroneously uses a five-step evaluation but nonetheless

makes the findings required in the seven-step, "medical improvement" analysis).

Having reviewed the ALJ's decision in its entirety, I find that the ALJ failed to make appropriate findings that would warrant discontinuance of plaintiff's benefits based on her existing disability of hepatitis C. Under the first step in the continuing disability review analysis, an ALJ must first consider whether the claimant has an impairment which meets or equals the severity of one listed in the regulations. The ALJ must address this issue prior to considering whether there has been any medical improvement in the previously determined disabling condition.

In the instant case, the ALJ found that plaintiff suffered from several severe impairments including hepatitis C, major depressive disorder/bipolar disorder, anxiety disorder NOS, and history of substance abuse,[8] he concluded that none of these impairments were severe enough to meet any listing in the regulations.

Having found that the plaintiff did not have a severe impairment, the ALJ was then required to determine whether she met the criteria for "medical improvement." Under the regulations, medical improvement is defined as "any decrease in the medical

---

[8] This Court is aware of the Plaintiff's history of substance abuse. However, the record indicates that the Plaintiff successfully completed requirements of Amherst Drug Court, and her treating psychiatrist, Dr. Ahrens noted on September 22, 2005 that Plaintiff did not have a substance abuse problem. (Tr. at 575). The issue of substance abuse was not reached by ALJ Straub.

severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled.... based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. 416.994(b)(1)(i)(2009); Rice v. Chater, 86 F.3d 1 (1st Cir. 1996); Fleming v. Sullivan, 806 F.Supp. 13 (E.D.N.Y. 1992). In making this determination, the Commissioner must compare the current medical severity of the relevant impairment with the severity of the impairment at the time disability status was granted. 20 C.F.R. 416.994(b)(1)(vii)(2009). It is the Commissioner's burden to demonstrate medical improvement, and only upon meeting this burden will benefits be terminated. Rice, 86 F.3d 1 (1st Cir. 1996); Batista v. Barnhart, 326 F.Supp.2d 345 (E.D.N.Y. 2004). Furthermore, the issue of whether the prior listing under which the claimant was determined disabled continues to be met "plays at best a subordinate role in determining medical improvement and is not determinative." Rice, 86 F.3d at 2.

The ALJ erred in finding that the plaintiff's chronic liver condition had improved, because there is no substantial medical evidence in the record to support such a finding. The record is void of any medical opinion whatsoever regarding improvement of the Plaintiff's medical status regarding her liver condition. As explained above, "neither a reviewing judge nor the Commissioner is

'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion' ... or indeed for any 'competent medical opinion.'" Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008; citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). In this case, although several physicians note the Plaintiff's history of hepatitis C and liver dysfunction (Tr. at 117, 180, 183, 436), and gastroenterology specialist James J. Piscatelli, M.D. submitted several notes on the status of the disease at the times he saw her in 1999 and 2005 (Tr. at 122-23, 201, 674-76), there is no opinion as to whether the Plaintiff experienced any change in the status of this disease.

Moreover, although the original determination of disability appeared to hinge on ALJ McNeil's finding of abnormal laboratory results, ALJ Straub failed to discuss the plaintiff's laboratory results, despite finding that her condition had improved. This is perhaps explained by the fact that there is no medical opinion in the record commenting on the clinical significance of changes in these laboratory values. In this regard, I find that the ALJ failed to develop the medical record, as he is required to do, to determine what, if any, effect the changes in plaintiff's liver values had on her impairment. See Batista v. Barnhart, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004)("[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the record,"

citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); "[t]he responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law," citing Brown v. Apfel, 174 F.3d 59 (2d Cir. 1999)). As noted by the Eastern District of New York, "[t]he duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician." Batista, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004). Because the medical evidence does not support the ALJ's conclusion that plaintiff's liver condition improved, and because the ALJ failed to develop the record on this mater, I find that he erred in finding that plaintiff is no longer entitled to benefits based on her liver condition.

B. Substantial evidence in the record establishes that the plaintiff is disabled as a result of her mental impairments.

Even if the ALJ had properly determined that plaintiff no longer qualifies as disabled under the regulations based on her liver condition, the ALJ erred in not finding the plaintiff to be disabled based on her psychiatric impairments. Specifically, the ALJ erred by not giving controlling weight to the opinions of plaintiff's treating physicians, not adequately explaining why those opinions were not given controlling weight, and selectively relying on only those portions of the medical record that supported his conclusion. Upon reviewing the record in its entirety, I find

-13-

that the ALJ's determination is not supported by substantial evidence, and indeed, the substantial evidence in the record supports a finding of disability.

  1.  The ALJ failed to properly apply the Treating Physician <u>Rule</u>

The Plaintiff contends that the ALJ did not properly consider and weigh the conflicting medical opinions of record. (Pl. Brief at 11). Under the treating physician rule, absent a finding that the treating physician's opinion is not supported by objective evidence, controlling weight is given to the opinion of a treating physician. 20 C.F.R. 416.927(d)(2)(2009); <u>Clark v. Commissioner of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). Moreover, if the ALJ does not afford controlling weight to a treating physician's opinion, this Circuit requires that the ALJ provide "good reasons" for choosing to discount the opinion of the treating physician. <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998). Particularly where psychiatric status is at issue, the opinions of non-examining physicians should be accorded less weight than those of treating physicians. <u>Westphal v. Eastman Kodak</u>, 2006 WL 1720380 (W.D.N.Y. 2006).

An ALJ must consider the following factors in determining whether a treating physician's opinion is to be given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the

record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In the instant case, however, the ALJ failed to give controlling weight to the opinions of the plaintiff's treating psychiatric physicians, and failed to adequately explain why those opinions were not given controlling weight.

Regarding the Plaintiff's psychiatric status, she had been treated for many years at Horizon Health Services (Tr. at 390-408, 442-52, 555-670). She had been followed by Ramesh Konakanchi, M.D., a psychiatrist, since at least 2002 (Tr. at 399). Beginning in August of 2005, the Plaintiff was subsequently followed by psychiatrist Kristen Ahrens, M.D. (Tr. at 572, 575, 580, 585, 664). In a medical source statement dated September 22, 2005, Dr. Ahrens indicated that the Plaintiff was mildly limited in two cognitive/psychiatric domains, and moderately to markedly limited in the remainder. (Tr. at 572-73). Dr. Ahrens also stated that the Plaintiff's diagnosis was bipolar disorder and that she was "psychiatrically disabled" and did not have a substance abuse problem. (Tr. at 575). A Horizon Health Services social worker also concluded that the Plaintiff should not return to work and "should be award[ed] disability benefits." (Tr. at 677).

As the Plaintiff correctly points out, there is little evidence that the ALJ considered the opinions of these treating

physicians in their entirety, let alone sufficiently explained his reasons for failing to give them controlling weight as required under the regulations and case law. Rather, the ALJ merely notes the diagnoses Dr. Konakanchi gave the Plaintiff, and selected only that portion of Dr. Ahrens' findings that supported his conclusion that she suffers from no disabling psychiatric condition (Tr. at 572). However, in her medical source statement dated September 22, 2005, although Dr. Ahrens does rate the Plaintiff as only mildly limited on three cognitive/psychiatric domains, Dr. Ahrens rates the Plaintiff as moderately limited on most domains, and markedly limited on one (Tr. at 572).

Moreover, treatment notes from both Drs. Konakanchi and Ahrens occasionally rated the Plaintiff's symptoms as "somewhat worse," (Tr. at 648, 656, 664), which subsequently occasioned changes in the Plaintiff's medications.

The record reveals that the ALJ relied on portions of the opinions of consultative psychiatric examinations by Drs. Ryan, Duffy, and Szymanski. Drs. Ryan and Duffy examined plaintiff once and Dr. Szymanski did not examine the plaintiff at all. While it is the role of the ALJ to balance and ultimately consider the weight to be given conflicting medical opinions, he must nonetheless either give controlling weight to the determinations of treating physicians or provide a good explanation for failing to do so. Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998); Snell v. Apfel, 177

-16-

F.3d 128 (2d Cir. 1999). In this case, without any explanation, the ALJ gave "significant weight" to the opinions of State Agency review physicians, while apparently discounting the conflicting opinions of plaintiff's treating physicians.

Further, the ALJ incorrectly stated that "the evidence of record does not indicate that the claimant was hospitalized for any mental health impairments and that her overall level of mental health functioning was rated as "stable." (Tr. 28). However, there are numerous instances in the record noting the Plaintiff's history of psychiatric hospitalization for attempted suicide. (Tr. 113, 126, 139, 432, 484). Regarding the stability of the Plaintiff's psychiatric status, her treating physicians' progress notes stating that her symptoms were "somewhat worse," as discussed *supra,* belie this conclusion. Furthermore, assuming *arguendo* that the Plaintiff's psychiatric condition was stable, stability alone cannot be equated with normal functioning, as one can be stable in a psychiatrically compromised state.

The ALJ essentially failed to acknowledge any inconsistencies among medical opinions in the record. As such, he made no attempt to explain his failure to accord the Plaintiff's treating physicians controlling weight. The ALJ erred by selectively choosing aspects of the record that support his conclusion, and by failing, without explanation, to give the opinions of plaintiff's treating physicians controlling weight.

-17-

2. The Evidence Contained in the record demonstrates that the plaintiff is disabled.

Following a review of the record in its entirety, I find that the opinions of plaintiff's treating physicians, along with the opinions of the consultative examiners and other medical evidence, demonstrates that the plaintiff is disabled as a result of her mental impairments. In evaluating the medical record, I find that conclusions reported in Dr. Duffy's consultative examination of the plaintiff dated 7/22/04 are very compelling. Dr. Duffy noted that O'Connor

> may have difficult[y] dealing appropriately with stress especially the stress associated with the work environment. In this regard, the claimant may need assistance to overcome this deficit. Results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

Tr. 487. (Emphasis added.) Dr. Duffy felt that plaintiff's prognosis was guarded "given the claimant's history of not working, claimant's feelings of hopelessness, and the claimant's fatigue and general lack of motivation." This opinion would reasonably support her inability to work because of psychiatric problems, yet was not even mentioned by the ALJ in his summary of Dr. Duffy's report. Tr. 30.

Moreover, the record contains substantial evidence, based on opinions of plaintiff's treating psychiatrists, that she generally suffered from moderate to marked limitations in her ability to

-18-

function in a work-related context. (Tr. at 572). Moreover, her most recent treating physician opined that the Plaintiff was psychiatrically disabled. (Tr. at 575). In his decision, the ALJ discusses the Plaintiff's psychiatric status only in the context of her residual functional capacity, after summarily concluding that she was under no disability. He makes only a cursory comment regarding the Plaintiff's failure to meet any listed psychiatric impairment, and as noted *supra*, he does not explain his reasons for heavily relying on the assessments of non-examining State review physicians. Because the opinions of the plaintiff's treating physicians are based on substantial evidence, the ALJ erred in not giving those opinions controlling authority. Additionally, because the opinions of plaintiff's treating psychiatric physicians demonstrate that she is disabled, I find that the ALJ erred in finding that she was not disabled as a result of her medical impairments.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision terminating the Plaintiff's disability benefits was not supported by substantial evidence. The record contains no opinion regarding any medical improvement in the Plaintiff's previously determined disabling liver dysfunction. Moreover, the record demonstrates that plaintiff is disabled as a

-19-

result of her psychiatric impairments.  I therefore grant judgment on the pleadings in favor of the Plaintiff, and remand this matter to the Commissioner for calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
Michael A. Telesca
United States District Judge

DATED: Rochester, New York
       October 9, 2009